In the Matter of D. Dean **BARNARD**, Bankrupt.

Hugh Lee **NATHURST, III**, ind. and as owner of West Coast Tractor Company and Toreador Inn of Ft. Myers, Inc., Plaintiff,

v.

D. Dean **BARNARD**, individually and as Trustee, Defendant.

Bankruptcy No. 77–601–Orl–AP.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

May 22, 1984.

Roger L. Waltemyer, North Fort Myers, Fla., for plaintiff.

D.D. Barnard, pro se.

## MEMORANDUM OPINION ON COMPLAINT ON DISCHARGEABILITY

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a pre-Code Chapter VII case and the matter under consideration is a claim of non-dischargeability asserted by Hugh Lee Nathurst, III, (Nathurst) individually and as owner of West Coast Tractor Company and Toreador Inn of Ft. Myers, Inc. (Toreador). The original complaint which was dismissed on a Motion to Dismiss filed by the Defendant, D. Dean Barnard (Debtor), was amended. In the Amended Complaint, Nathurst and Toreador assert a claim of non-dischargeability in Count I in the amount of $56,650, $112,000 and $300,000 respectively. The claim of non-dischargeability set forth in Count II is based on two promissory notes, each in the face amount of $150,000. The claim of non-dischargeability set forth in Count III is based on some personal notes unspecified in amount.

In due course, the matter was set down for final evidentiary hearing. The Debtor failed to appear, thus, the Plaintiffs presented their case ex parte. At the conclusion of the hearing on March 31, 1981, this Court entered an Order and declared the obligations owed to Nathurst and Toreador by the Debtor to be non-dischargeable. 10 B.R. 577. The Order was based on the record established at the hearing which record supported the proposition that the Debtor did, in fact, obtain monies and properties from Nathurst through false pretenses.

The Debtor filed a timely notice of appeal and, upon appeal, the District Court reviewed the records, concluded that this Court erred in the determination of the non-dischargeability of the debt, vacated this Court's judgment and remanded the case for re-trial. Upon receipt of the mandate from the District Court, the matter was rescheduled for trial at which time this Court received testimony and documentary evidence which reveals the following pertinent facts relevant to this controversy:

At the time relevant to the matter under consideration, Nathurst was the sole stockholder and principal officer of a Florida corporation known as Toreador Inn of Ft. Myers, Inc. Toreador operated a retail business under the name of West Coast Tractor which was engaged primarily in selling of farming machinery. It was also the holder of a franchise from John Deere Company. Sometime in early 1976, Nathurst, who had at that time already moved at least partially to California, placed a person in charge the Ft. Myers operation

who soon developed a less than friendly relationship with representatives of John Deere. There is no doubt that, at that time, there was a danger that the franchise might be cancelled.

The Debtor, who was at that time a practicing attorney, had known Nathurst for at least 15 years, both socially and also as his attorney. The Debtor discussed the idea with Nathurst of creating a holding company under the name of Luxor Corporation for the purpose of acquiring the John Deere franchise and to continue to operate West Coast Tractor together with other business ventures contemplated by Barnard. As a result of these negotiations, Nathurst and the Debtor entered into an agreement whereby the Debtor agreed to purchase from Nathurst the real property on which West Coast Tractor business was conducted and all the assets of West Coast Tractor owned by Toreador. In the interim, the Debtor applied for and ultimately obtained a John Deere franchise.

According to the terms of this agreement with Nathurst and Toreador, the Debtor agreed to pay to Nathurst $770,000 to be paid on the following terms: $275,000 cash at closing, and the remainder of the purchase price to be paid in monthly installments of $6,600 per month over the period of 10 years, including interest at the rate of 8%. The agreement also called for payment of taxes by the Debtor for the tax year 1976. The closing was scheduled to be held on November 16, 1976. Although, the Debtor was not able to make the down payment required by the contract, Nathurst agreed to proceed and the transaction was closed. At the closing, the Debtor gave Nathurst three checks, $25,000 each, payable to Nathurst and signed by the Debtor (Exhs. # 1, # 2, and # 3). It is without dispute that all these checks were ultimately dishonored for insufficient funds. In addition, on November 30, the Debtor also gave a check to Nathurst in the amount of $12,000; on December 24, a check in the amount of $12,000; and on November 28, a check in the amount of $13,000, all of which were ultimately dishonored. It is without dispute that at one point in time, the Debtor gave a certified check to Nathurst in the amount of $50,000.

As part of the closing, the Debtor executed two promissory notes payable to Nathurst in the amount of $150,000 each. The first was to be a down payment on the real estate purchase from Nathurst and the second was made payable to Toreador for the purchase of the inventory. Neither of these promissory notes were ever paid, although the Debtor promised Nathurst that he would ultimately have the money to pay for them. In addition, the evidence is uncontradicted that at one point in time, Nathurst loaned the Debtor $56,000, a sum which was not repaid because of an overdraft situation at West Coast Tractor, which at that time was operated by the Debtor. It is without dispute that the Debtor remained in control of the affairs of West Coast until the following April, at which time he surrendered all the remaining assets to Nathurst, who ultimately liquidated the inventory. In addition, the Debtor gave a quit claim deed to Nathurst in lieu of foreclosure to the real property. These are the basic facts on which this claim of non-dischargeability is based.

The claim of non-dischargeability is based on § 523(a)(2)(A) of the Bankruptcy Code which in pertinent part provides as follows:

§ 523. Exceptions to discharge

(a) A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services or an extension, renewal, or refinance by credit, by—

(A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; or ...

▐ It is well established that the burden to establish a claim of non-dischargeability under this Section of the Code is placed on the plaintiff who must present persuasive and convincing evidence that the debtor did, in fact, obtain property by

false pretenses or by actual fraud. *National Bank of North America v. Newmark (In re Newmark)*, 20 B.R. 842, 853 (Bkrtcy.E.D.N.Y.1982).

█ The record is totally devoid of any evidence that Barnard made any false representations in connection with the transaction, although it is clear that he made representations that he will pay the purchase price; that he expected some funds from other real estate transactions; and he intended to make good the checks which were dishonored. There is nothing in this record which indicates that at the time he made this statement there was no realistic basis to support the statement. In sum, the entire transaction concerning the acquisition of the assets of West Coast Tractors was merely an ordinary commercial transaction which did not turn out to be, as anticipated, and obligations undertaken by Barnard were not met due to the financial downturn of his affairs. This is a far cry from the claim of non-dischargeability based on fraud or the claim that he obtained monies and properties by false pretenses. This being the case, this Court is satisfied that the Plaintiff has failed to establish the requisite degree of proof, all the essential elements required under § 523(a)(2) of the Code to sustain a claim of non-dischargeability and, for this reason, the complaint should be dismissed with prejudice.

A separate final judgment will be entered in accordance with the foregoing.