**In re Donald Burgess COCHRAN, Debtor.**

**SWIM AID OF PALM BEACH COUNTY, INC., a Florida corporation and Thomas Hannon, Jr., a/k/a James T. Hannon, a/k/a James Hannon, Plaintiffs,**

**v.**

**Donald Burgess COCHRAN, Defendant.**

**Bankruptcy No. 87–169–BKC–6P7. Adv. No. 87–105.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Sept. 7, 1988.

**524**

Charles F. Edwards, Orlando, Fla., for plaintiffs.

Andrew Baron, Orlando, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding is before the Court upon the complaint filed by Swim Aid of Palm Beach County, Inc., and Thomas Hannon, Jr., seeking an exception to discharge under 11 U.S.C. § 523(a)(2)(A) for monies allegedly obtained upon false pretenses, false representations, and actual fraud. A trial of this matter was held July 21, 1988, and upon the evidence presented, the Court enters the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

Pre-petition, the defendant held the exclusive right to distribute Swim Aid water purification systems in the State of Florida, for a one-year period which was automatically renewable for subsequent one-year periods provided there was a sale of a minimum of 400 units per year.

To facilitate the sale of the Swim Aid products in Florida, defendant decided to partition his sales territory by entering into various sub-distribution arrangements. On April 7, 1985, defendant entered into such an agreement with the plaintiffs granting them the exclusive right to distribute Swim Aid water purification systems in Palm Beach County, Florida, for $10,000.00. This distributorship was subject to continuation on an annual basis provided plaintiffs purchased a minimum of ten water purification units per year from defendant.

Plaintiffs later purchased the distributorship for Orange County, Florida, for $10,000 on June 10, 1985, on the same terms and conditions. Additionally, plaintiffs paid the defendant $4,950.00 for ten Swim Aid water purification systems.

Several of these Swim Aid water purification systems proved to be defective. The plaintiffs asked defendant for replacement, but he refused. Plaintiffs then contacted the manufacturer of the product in Scottsdale, Arizona, to complain about the lack of dealer support. There, for the first time, plaintiffs learned that the manufacturer did not agree that defendant had the authority to sub-franchise distribution rights.

On January 23, 1987, the defendant filed a petition for relief under Chapter 7 of the Bankruptcy Code. On April 27, 1987, the plaintiffs initiated this adversary proceeding seeking to except from discharge under § 523(a)(2)(A) the amounts they invested in the sub-franchise agreements. Their primary contention is that defendant was not authorized to sell the sub-franchise agreements and in so doing, he obtained money upon false pretenses, false representations, and/or actual fraud.

A trial of this case was held July 21, 1988. The Court, at trial, found that the $4,950.00 paid for the ten water purification systems delivered to plaintiffs could not be excepted from discharge as it simply represents damages flowing from a breach of contract. The remaining issue of whether the $20,000.00 plaintiffs invested in the sub-franchise agreements should be excepted from discharge was taken under advisement, and the Court now rules against such exception.

## CONCLUSIONS OF LAW

Section 523 (a)(2)(A) of the Bankruptcy Code provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other then a statement respecting the debtor's or an insider's financial condition.

Plaintiffs contend that defendant violates this section when he sold to them the exclusive right to sell the Swim Aid product in Orange and Palm Beach counties. In support of their position, plaintiffs introduced a letter dated February 24, 1986, from Dan Rutland, Vice–President of Swim Aid Products, Inc., informing the plaintiffs that the manufacturer no longer had a franchise agreement with the defendant. The letter also contained several damaging statements concerning the defendant's character. These allegations are repeated in the deposition of Mr. Rutland which was introduced at trial.

The defendant's testimony supports a different version. He testified that during his negotiations with Swim Aid Products, Inc., he dealt exclusively with Don Rey, the former president of the company. Defendant further testified that Dan Rutland was in no way involved with the negotiations or communications which ultimately led to Cochran obtaining the exclusive right to sell Swim Aid products in Florida. Furthermore, defendant stated that the negotiations with Mr. Rey led him to believe that he could sub-franchise his exclusive right of distribution to facilitate the sale of their products. Indeed, defendant and his brother testified that Mr. Rey approved and even encouraged such efforts.

The Court finds the testimony of the defendant and his witnesses to be more credible. From all indications, Cochran labored under the impression that he had the authority to sell the sub-franchises to third parties so that he could meet the minimum sales quota contained in the original contract. Furthermore, the contract between Swim Aid and Cochran did not prohibit Cochran from dividing his exclusive sales territory. What is not prohibited by contract or forbidden by law is permissible.

To sustain an exception to discharge under § 523(a)(2)(A), the plaintiffs must prove through persuasive and convincing evidence that: (i) the defendant made material false representations; (ii) that at the time he made them he knew they were false; (iii) that he made them with the intention of deceiving the other party; (iv) that the other party relied upon those representations; and (v) that the other party sustained the alleged loss and damages as the proximate result of those representations. *In re Young*, 90 B.R. 521 (Bkrptcy. M.D.Fla.1988); *In re Hammett*, 49 B.R. 533, 534 (Bkrptcy.M.D.Fla.1985); *Matter of Barnard*, 39 B.R. 593, 595 (Bkrptcy.M.D. Fla.1984); *In re Newmark*, 20 B.R. 842, 853 (Bkrptcy.E.D.N.Y.1982).

Plaintiff has failed in this regard. Although defendant did, in fact, make the representation that he had the right to sell the sub-distributorships and plaintiffs did in fact, rely on those representations, the Court can discern no credible evidence that the defendant knew those representations to be false or that he made them with the intent to deceive the plaintiffs. At most, his right to sub-divide his sales territory was subject to a bona fide dispute with the manufacturer. This hardly amounts to knowledge that he did not have the right to partition his sales territory.

Moreover, there is a serious question as to whether the plaintiffs' reliance on defendant's authority to sell them the distributorship was the proximate cause of plaintiffs' damages. Indeed, the evidence indicates that neither the defendant or the plaintiffs could get the systems to work properly. The defendant was only able to get one-half of the twenty units he sold to work properly and, thereafter, discontinued his efforts. Similarly, the plaintiffs were unable to make the one unit they sold to work properly and they too discontinued

their efforts. The Court cannot therefore conclude that the plaintiffs' problems were caused by lack of authority to sell distributorships of Swim Aid products.

The Court finds that the plaintiffs' losses are not attributable to acts indicative of false pretenses, false representations, or actual fraud. The product to have been marketed could not be made to work satisfactorily by the plaintiffs or the defendant. It was simply a bad investment by all parties.

The Court will separately enter final judgment in favor of the defendant.