In re Mark Allan LANDEN, Debtor.

**FIRST FEDERAL OF
JACKSONVILLE,**
Plaintiff,

v.

**Mark Allan LANDEN, Defendant.**

Bankruptcy No. 87–2123–BKC–3P7.
Adv. No. 88–63.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Feb. 8, 1989.

and other credit cards for the deficiency. In December of 1987, the defendant contacted his attorney, Donald W. Matthews, to discuss his financial problems and filed a petition for relief on December 22, 1987.

Plaintiff brings this action seeking to except from discharge the $5,246.47 balance (including interest) on the debit card account as a debt incurred upon false pretenses or actual fraud pursuant to § 523(a)(2)(A) of the Bankruptcy Code.

Robert D. Hiday, Jacksonville, Fla., for plaintiff.

Donald W. Matthews, Jacksonville, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding is before the Court upon a Complaint seeking an exception to discharge pursuant to 11 U.S.C. § 523(a)(2). A trial was held on December 15, 1988, and upon the evidence presented, the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

On March 3, 1987, the defendant filed an application with plaintiff seeking a line of credit for $1,000.00. The application stated that defendant was employed as a branch manager with the Florida Times Union and had a monthly salary of $2,500.00. Plaintiff reviewed defendant's credit and employment history and on March 16, 1987, issued a First Plus Visa Debit Card to the defendant enabling him to borrow up to $500.00.

In September of 1987, the defendant received several large cash advances on his debit card and eventually exceeded his line of credit by $4,796.86. The cash was admittedly used by the debtor to support his gambling habit.

Defendant's deposition testimony reveals that his income was insufficient to meet his ordinary expenses and that he utilized this

## CONCLUSIONS OF LAW

The Complaint in this adversary proceeding is premised upon § 523(a)(2)(A) of the Bankruptcy Code. That section provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

█ Plaintiff suggests that the use of a credit card automatically implies that the user has the ability and intention to pay for the charges incurred, and when there is a default in payment, the cardholder is guilty of obtaining property or services upon false pretenses. There is some support for this position. *See, e.g., In re Lipsey,* 41 B.R. 255 (Bkrptcy.E.D.Pa.1984); *In re Higgs,* 39 B.R. 181 (Bkrptcy.N.D.Ohio); *In re Schmidt,* 36 B.R. 459 (D.E.D.Mo.1983); *In re LaBuda,* 37 B.R. 47 (Bkrptcy.M.D. Fla.1984) (Paskay, J.). "[A] credit card purchase made with knowledge by the purchaser of his inability or obvious lack of intent to pay is tantamount to obtaining property through false pretenses." *In re LaBuda,* at 48.

However, in *First National Bank of Mobile v. Roddenberry,* 701 F.2d 927 (11th Cir.1983), the Eleventh Circuit Court of Appeals flatly rejected this "implied misrepresentation" doctrine and held that "the voluntary assumption of risk on the part of a

bank continues until it is clearly shown that the bank unequivocally and unconditionally revoked the right of the cardholder to further *possession and use* of the card, and until the cardholder is aware of this revocation." *Id.* at 932.

This Court is bound by this decision of the Eleventh Circuit. If the Court were to automatically assume an "implied mis-representation" for the use of credit/debit cards, it would be placing credit card companies in a special category of creditors whose debts would almost always be non-dischargeable. *See, Matter of Carpenter,* 53 B.R. 724 (Brkptcy.N.D.Ga.1985). Said the Eleventh Circuit, "Banks are willing to risk non-payment of debts because that risk is factored into finance charges. Because the risk is voluntary and calculated, [§ 523(a)(2)(A)] should not be construed to afford additional protection for those who unwisely permit or encourage debtors to exceed their credit limits." *Roddenberry,* 701 F.2d at 932.

■ Turning to the facts in this case, it is clear that the plaintiff did not revoke the defendant's credit privileges prior to the filing of the bankruptcy petition. Defendant retained possession of the card until that time. Furthermore, the evidence indicates that the bank failed to revoke defendant's credit privileges on prior occasions where the defendant exceeded his credit limit. Under the circumstances, the Court is unable to conclude that the defendant obtained money through false misrepresentations.

■ Plaintiff wishes the Court to draw an inference from the fact that the defendant was having financial difficulty, that he intended to defraud plaintiff. This is precisely the implication rejected in *Roddenberry* —Intent to defraud is too easily implied from the fact that the debtor had an inability to repay his debts. From the evidence presented, there is nothing to suggest that the defendant did not intend to pay for the charges he was incurring. Although the extension of credit to defendant has proven in hindsight to be unwise, it does not make this debt nondischargeable.

Anticipating such result, the plaintiff alleges in the alternative that the defendant obtained money through actual fraud. To sustain an exception to discharge under § 523(a)(2)(A) for actual fraud, a creditor must prove through clear and convincing evidence that (i) the defendant made materially false representations; (ii) that at the time he made them he knew the representations were false; (iii) that he made them with the intention of deceiving the other party; (iv) that the other party relied upon those representations; and (v) that the other party sustained damages as the proximate result of those misrepresentations. *In re Cochran,* 90 B.R. 523 (Bkrptcy.M.D. Fla.1988); *In re Young,* 90 B.R. 521 (Bkrptcy.M.D.Fla.1988); *In re Hammett,* 39 B.R. 593, 595 (Bkrptcy.M.D.Fla.1984); *Matter of Carpenter,* 53 B.R. 724, 729 (Bkrptcy.N.D.Ga.1985).

■ Plaintiff contends that it has met its burden with respect to the five elements of actual fraud listed above. First, it argues that the defendant made a false representation on his credit card application when he stated that he was employed as a "District Manager" instead of "Branch Manager." While this statement may have been inaccurate, the evidence is insufficient to conclude that it was made with a fraudulent intent. Furthermore, the credit application attached to the complaint shows that the plaintiff was aware of defendant's position as "Branch Manager" prior to issuing the debit card.

■ Secondly, plaintiff contends that by his use of the debit card, the defendant represented that he would comply with the terms of the credit agreement. Although the defendant violated the terms of this agreement by exceeding his credit limit, the mere violation of such a contract standing alone does not constitute fraud. *Roddenberry,* 701 F.2d at 932.

■ Additionally, plaintiff suggest that the defendant is guilty of actual fraud because he misrepresented that he had the intention to pay for the charges incurred. In *Carpenter, supra* at 730, that court enunciates a litany of factors which may be considered in determining whether a debtor

had the intention to pay for credit card charges he has incurred:

(a) The length of time between the making of the charges and the filing of bankruptcy;

(b) whether or not an attorney had been consulted concerning the filing of bankruptcy before the charges were made;

(c) the number of charges made;

(d) the amount of the charges;

(e) the financial condition of the debtor at the time the charges are made;

(f) whether the charges were above the credit limit of the account;

(g) were there multiple charges on the same day;

(h) whether or not the debtor was employed;

(i) the financial sophistication of the debtor;

(j) whether there was a sudden change in the debtors spending habits; and

(k) whether the purchases were made for luxuries or necessities.

No single factor listed above is determinative. Instead, the Court must consider the totality of the evidence and make the determination of intent on a case-by-case basis.

Having considered the evidence in the light most favorable to the defendant, the Court concludes that the debtor had the intent to repay his creditor when the cash withdrawals were made. First, the evidence indicates that the defendant made the withdrawals some fifty days prior to filing for bankruptcy. Secondly, the debtor had what could be considered a well-paying job and appeared to be financially sophisticated. Thirdly, although the debtor visited an attorney prior to making the cash withdrawals, it does not appear that the visit was in contemplation of bankruptcy. Finally, the Court is persuaded by defendant's honest but somewhat questionable belief that he would soon get lucky at gambling and pay off his debts.

The evidence in this case suggests that the defendant had a gambling habit while under severe financial stress. Although he exceeded his credit limit by $4,769.86 in a very short period of time, the Court finds that he had the intent to repay his creditors when the advances were taken.

In order to prevail in this action, plaintiff is required to prove each and every element of actual fraud. Because plaintiff failed to establish that the defendant made a false representation, the Court need not address the other elements of actual fraud.

The Court will, by separate order, enter Final Judgment in favor of the defendant.