In re Edward K. WAY, Debtor.

Bank Of America, N.A., Plaintiff,

v.

Edward K. Way, Defendant.

Bankruptcy No. 99–8255–3F7.
Adversary No. 00–37.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Oct. 6, 2000.

**294**

Gary J. Lublin, Law Offices of Gary J. Lublin, P.A., Orlando, FL, for Plaintiff.

Aaron R. Wolf, Doran, Wolfe, Rost & Ansay, Daytona Beach, FL, for Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Proceeding is before the Court on the Complaint Seeking Exception to Discharge and for Entry of Money Judgment filed by Bank of America, N.A. ("Plaintiff") on January 25, 2000. (Adv. Doc. 1.) Edward K. Way ("Defendant") responded to that Complaint with an Answer and Demand for Attorney's Fees filed February 3, 2000. (Adv. Doc. 6.) Based upon evidence presented at trial on July 19, 2000, the Court finds that the $4,516.00 in credit extended by Plaintiff to Defendant between July 16 and July 28, 1999 is not excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A). The Court also finds that Defendant is not entitled to attorney's fees and costs pursuant to 11 U.S.C. § 523(d).

## FINDINGS OF FACT

In January 1994 Barnett Bank ("Barnett"), predecessor-in-interest to Plaintiff by merger, issued a pre-approved credit card to Defendant, account number 4312–1213–8301–7174.

Barnett pre-approved Defendant based on a "Fair Isaac" score gleaned from credit bureau reports. The "Fair Isaac" method is commonly used in the industry for this purpose. Barnett double-checked the "Fair Isaac" score by passing Defendant's name through the Equifax Credit Bureau ("Equifax"). Equifax failed to find any of Barnett's specific "knock-out" criteria, which include existing Barnett cards, delinquency, repossession, foreclosure and bankruptcy.[1] Defendant scored 55 points above the minimum necessary for pre-approval on Equifax's "Beacon Scores" system.

Defendant made no false statements or misrepresentations regarding his intention or ability to repay Barnett in order to acquire the card.

First Barnett, then NationsBank N.A., Barnett's successor, and, finally, NationsBank N.A.'s successor, Plaintiff, periodically rechecked Defendant's scores with the TransUnion Credit Bureau. Defendant consistently registered qualifying "Fair Isaac" scores on these rechecks.

In the middle of 1996, Defendant paid off an approximately $1,200 .00 balance on the card. The account lay dormant for about three years.

Defendant dug the card out of his wallet and resumed charging on May 22, 1999. Between May 22 and July 28, 1999, Defendant charged $5,915.25 in purchases.

Defendant made the charges at issue between July 12 and July 28, 1999. During this period Defendant obtained $4,516.00 in credit and made $181.63 in payments to Plaintiff.

Defendant's charges included $3,144.00 for a residential air conditioner on July 16,

---

1. Defendant had filed for bankruptcy protection approximately thirty years ago.

1999, and $1,372.00 worth of windows for his house on July 29, 1999.

During the six months before the petition date, Defendant charged about $26,886.00 on other credit cards.

Defendant earned $1,591.80 net per month during the period in question. Defendant's monthly expenses, debt service on credit cards aside, amounted to $1,690.65.

On August 23, 1999, Defendant's wife closed the couple's joint savings account. Defendant's wife testified that she stored $11,269.15, partially in cash and partially in a cashier's check, in her purse, along with several thousand more dollars from other unspecified sources. Defendant and his wife testified that they intended to pay the debt to Plaintiff with this money. Defendant's wife testified that she lost the purse and the small fortune inside several days after the withdrawal. Neither Defendant nor his wife called the police about the missing purse and money.

On August 27, 1999, Defendant consulted a bankruptcy attorney and paid him up front.

On October 28, 1999, Defendant filed a voluntary Chapter 7 petition. (Case Doc. 1.)

On the date of petition, Defendant carried a $6,092.02 balance on account number 4312–1213–8301–7174. Defendant listed $132,404.75 worth of unsecured debt on his schedules. Almost all of Defendant's unsecured debt stemmed from credit card use.

### RELEVANT STATUTORY PROVISIONS

Plaintiff alleges that the $4,516.00 in credit at issue should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) provides, in relevant part,

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . .

11 U.S.C. § 523(a)(2)(A) (2000).

Defendant asserts that the credit card debt accumulated between July 16 and July 29, 1999 is dischargeable and that Defendant is therefore entitled to attorney's fees and costs pursuant to 11 U.S.C. § 523(d). Section 523(d) provides, in relevant part:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

11 U.S.C. § 523(d) (2000).

### CONTENTIONS OF THE PARTIES

Plaintiff contends that Defendant obtained $4,516.00 in credit between July 16 and July 28, 1999, through the employment of actual fraud, namely by using the credit card without the intent or ability to pay Plaintiff for the charges. Credit card debt obtained through such actual fraud may be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A). Plaintiff asserts that Defendant, by using the card, impliedly represented that he would pay the account balance or at least the minimum

payment. Plaintiff further alleges that Plaintiff relied on these implied representations in leaving Defendant's credit privileges intact.

Defendant counters that the credit in question was not obtained through actual fraud because Defendant made no representations to Plaintiff that he would pay the balance or minimum payment on the account.

Defendant additionally contends that Plaintiff's Complaint Seeking Exception to Discharge was not "substantially justified" and that the Court should therefore award costs and fees to Defendant under 11 U.S.C. § 523(d).

## CONCLUSIONS OF LAW

### A. SHOULD THE CREDIT CARD DEBT ACCUMULATED BETWEEN JULY 16 AND JULY 29, 2000 BE EXCEPTED FROM DISCHARGE?

### 1. ELEMENTS OF "ACTUAL FRAUD" UNDER § 523(a)(2)(A)

In order for a particular debt to be excepted from discharge, a plaintiff must prove by a preponderance of the evidence that a defendant's conduct fits within the exception to discharge. *See Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Exceptions to discharge must be strictly construed in order to give effect to the "fresh start" policy of the Bankruptcy Code. *See Equitable Bank v. Miller (In re Miller),* 39 F.3d 301, 304 (11th Cir.1994).

A credit card issuer must show actual fraud by a preponderance of the evidence in order to except from discharge credit card debt run up prior to revocation of a cardholder's credit privileges. *See First Nat'l Bank of Mobile v. Roddenberry,* 701 F.2d 927, 932 (11th Cir.1983).[2] In order to satisfy the actual fraud prong of § 523(a)(2)(A), an issuer seeking exception from discharge must show by a preponderance that

(1) the cardholder made materially false representations;

(2) at the time the cardholder made such misrepresentations he knew they were false;

(3) the cardholder made the misrepresentations with the intent to deceive the issuer;

(4) the issuer relied upon those misrepresentations; and

(5) the issuer relied on the misrepresentations to its detriment.

*See AT & T Universal Card Servs. Corp. v. Reneer (In re Reneer),* 208 B.R. 731, 734 (Bankr.M.D.Fla.1997).

### 2. DOES A CREDIT CARD HOLDER REPRESENT TO AN ISSUER AN INTENTION AND ABILITY TO PAY AT LEAST THE MINIMUM PAYMENT ON THE ACCOUNT BY USING THE CARD TO MAKE PURCHASES?

There is a split of authority as to whether or not a cardholder misrepresents an intention or an ability to pay by using a credit card when insolvent. Some courts find that a cardholder makes an implied representation of intention and ability to at

---

2. The court in *Roddenberry* interpreted § 17(a) of the Bankruptcy Act rather than § 523(a)(2)(A) of the Bankruptcy Code. However, the two provisions are so similar that courts have long applied *Roddenberry* to proceedings arising under § 523(a)(2)(A). *See*

*e.g. AT & T Universal Card Servs. Corp. v. Stansel, (In re Stansel)* 203 B.R. 339, 342 (Bankr.M.D.Fla.1996) (finding that creditor did not prove actual fraud sufficient for exception from discharge).

least pay the minimum payment on an account by using the card.[3]

■ The recent trend is to reject the "implied representation" theory because it is at odds with the Supreme Court's decision in *Williams v. United States*, 458 U.S. 279, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982). *See, e.g. Universal Bank v. Kuntz (In re Kuntz)*, 249 B.R. 699 (Bankr.N.D.Tex. 2000). In *Williams*, the Court held that the drawer of a check makes no representation that sufficient funds exist in the account upon which the check is drawn. *See Williams*, 458 U.S. at 285, 102 S.Ct. 3088. Therefore, the drawer of a bad check is not guilty of making a "false statement" in violation of a federal bank fraud statute. *See id.* The Court stated that checks only serve to direct a bank to pay the face amount to the holder of the check. *See id.* at 284, 102 S.Ct. 3088. A check merely evidences a contractual agreement; it cannot be "true" or "false." *See id.*

The court in *Kuntz* found that, like checks, credit card swipes cannot be "true" or "false" and therefore cannot embody a representation or misrepresentation as to a cardholder's intent or ability to pay an issuer. *See Kuntz*, 249 B.R. at 704. The *Kuntz* court noted that "most of the courts adopting the "implied representation" theory have failed to take the check cases and the Supreme Court's decision in *Williams* into consideration." *Id.* at 705.

This Court appears to be the first in the Eleventh Circuit to make the connection between *Williams* and § 523(a)(2)(A) actual fraud. However, this Court did rule in *Landen* that the *Roddenberry* decision stands for the proposition that the "implied representation" theory does not ap-

ply to the "false pretenses" or "false representation" prongs of § 523(a)(2)(a). *See First Fed. of Jacksonville v. Landen*, 95 B.R. 826, 827–828 (Bankr.M.D.Fla.1989) (Proctor, J.); *see also AT & T Universal Card Servs. Corp. v. Merritt (In re Merritt)*, 1997 WL 375693, *2 (Bankr.M.D.Fla. 1997). In *Landen*, Judge Proctor stated that in *Roddenberry*

> the Eleventh Circuit Court of Appeals flatly rejected this "implied representation" doctrine and held that the voluntary assumption of risk on the part of a bank continues until it is clearly shown that the bank unequivocally and unconditionally revoked the right of the cardholder to further possession and use of the card, and until the cardholder is aware of this revocation.

*Landen*, 95 B.R. at 828 (quoting *Roddenberry*, 701 F.2d at 932).

■ It is unclear from the wording of *Landen* whether or not the Court meant to extend its interpretation of *Roddenberry* to actual fraud cases. This Court finds that extending the rejection of the "implied representation" theory to actual fraud cases is legally and logically consistent. As Judge Proctor noted in *Landen*, using a credit card with no intention of making the minimum payment breaches the cardholder agreement. *See Landen*, 95 B.R. at 828. However, the Court stated that "the mere violation of such a contract standing alone does not constitute fraud." *Id.* The *Kuntz* court used virtually identical language in explicitly rejecting the use of the "implied representation" theory in actual fraud cases: "[T]he cardholder's breach of contract when he fails to pay his credit card debt is insufficient as a matter

---

**3.** For a thorough list of these courts and samples of their byzantine tests and lists of factors, see *GM Card v. Cox (In re Cox)*, 182 B.R. 626, 633 (Bankr.D.Mass.1995) (finding that any implied representation from use of a credit card does not satisfy the § 523(a)(2)(a) actual fraud standard).

of law to support a nondischargeability complaint." *Kuntz,* 249 B.R. at 705.

The Court additionally finds that use of the "implied representation" theory allows an impermissible extension of § 523(a)(2)(A) beyond the bounds of Congressional intent. The Court reiterates that exceptions to discharge must be narrowly construed. *See Equitable Bank,* 39 F.3d at 304. The "implied representation" theory stretches § 523(a)(2)(A) to the breaking point in an effort to catch profligate spenders who avoid the presumption of fraud found in § 523(a)(2)(C). Section 523(a)(2)(C) creates a presumption of actual fraud arising out of a consumer debtor's luxury purchases over $1,000.00 within 60 days of the petition date. *See* 11 U.S.C. § 523(a)(2)(C) (2000). The Court suspects that "implied representation" courts utilize the theory in order to catch spendthrifts smart enough to stop charging within 60 days of filing, or careful enough to keep their charges under $1,000.00. Congress did not provide any rationale for selecting 60 days or $1,000.00 as cutoffs for the presumption. Some courts are willing to stretch § 523(a)(2)(A) in order to circumvent these arbitrary limits.

This Court recognized the impropriety of that tendency in *Landen,* where Judge Proctor stated that one flaw of "implied representation" theory was that it creates a presumption of actual fraud outside the presumption period provided by Congress in § 523(a)(2)(C). *See Landen,* 95 B.R. at 828. The Court stated:

> if the court were to automatically assume an "implied misrepresentation" for the use of credit/debit cards, it would be placing credit card companies in a special category of creditors whose debts would almost always be nondischargeable.

*Id.* (citations omitted).

Credit card issuers do not deserve this level of protection for debts they voluntarily assume and from which they profit greatly. In the instant case, it was Plaintiff who approached Defendant offering credit. Plaintiff had the means necessary to monitor the account and to revoke Defendant's privileges at any time. The *Roddenberry* court emphatically declared that the issuer, because of this control, bears the risk of loss from discharge until it revokes a cardholder's credit privileges. *See Roddenberry,* 701 F.2d at 932. Issuers fail to exercise these prerogatives and leave intact the privileges of delinquent cardholders because the finance charges collected on revolving credit more than make up for lost payments. *See id.*

Issuers profit from a low-odds credit crapshoot. Issuers roll the dice by not revoking the privileges of cardholders with large balances and overdue minimum payments. An issuer wins if a cardholder begins paying the minimum payment and finance charges. An issuer loses if a cardholder files for bankruptcy protection and receives a discharge. If the Court allowed for the broad exception to non-dischargeability created by the "implied representation" theory, then issuers win either way. Debtors always lose. The Court finds such a result economically and legally repugnant. The *Roddenberry* court came to the same conclusion seventeen years ago:

> Banks are willing to risk non-payment of debts because that risk is factored into finance charges. Because the risk is voluntary and calculated, § 523(a)(2)(A) should not be construed to afford additional protection for those who unwisely permit or encourage creditors to exceed their credit limits.

*Roddenberry,* 701 F.2d at 932.

Therefore, the Court rejects the "implied representation" theory and finds that a cardholder does not make a representa-

tion of intention or ability to pay by using a credit card. An issuer must bring forth evidence of some actual misrepresentation to satisfy the representation element of the § 523(a)(2)(A) actual fraud exception to discharge.

■ The Court finds it unnecessary to delve into the myriad lists of factors employed by "implied representation" courts and courts rejecting the theory with their fingers crossed. *See, e.g. Merritt*, 1997 WL 375693, at \*3. If an issuer fails to produce any evidence of an actual, affirmative misrepresentation by a cardholder, then the § 523(a)(2)(A) inquiry closes and an ornamental exploration of a cardholder's intent to pay is foreclosed. There is no actual fraud without some affirmative misrepresentation and reliance thereupon. There is no separate exception to discharge for "possession of an intent to defraud," and therefore no associated issue for this court to address by the enunciation and conclusory disposition of the eleven-factor "intent to defraud" determination.

### 3. APPLICATION TO THE INSTANT CASE

■ The Court finds that Plaintiff did not present any evidence of an actual misrepresentation by Defendant. Defendant did nothing to coerce Plaintiff into extending Defendant credit for the purchases made between July 16 and July 28, 1999. Plaintiff's entire case for an actual fraud exception from discharge rested on the "implied representation" theory. The Court rejected application of this theory to the facts of the instant case.

Therefore, Plaintiff did not present a prima facie case for exception from discharge under the actual fraud prong of § 523(a)(2)(A). Plaintiff's Complaint Seeking Exception to Discharge fails as a matter of law. Defendant's debt to Plaintiff

may not be excepted from discharge under that provision.

### B. IS A COMPLAINT SEEKING EXCEPTION TO DISCHARGE UNDER § 523(A)(2) "SUBSTANTIALLY JUSTIFIED" SO AS TO AVOID AN AWARD OF ATTORNEY'S FEES WHERE AN ISSUER DID NOT REVOKE A CARDHOLDER'S CREDIT PRIVILEGES PRIOR TO THE PETITION DATE AND WHERE THE SOLE ACCUSATIONS OF FRAUD REST ON "IMPLIED REPRESENTATION" GROUNDS?

### 1. THE "SUBSTANTIALLY JUSTIFIED" STANDARD

■ Congress intended that § 523(d) attorney's fees be liberally awarded to prevailing debtors in discharge objection proceedings. *See TranSouth Fin. Corp. of Florida v. Johnson*, 931 F.2d 1505, 1508 (11th Cir.1991). Section 523 was meant to discourage creditors from using frivolous litigation to coerce debtors into settlements that amounted to partial non-discharge or reaffirmation, both of which endanger a debtor's "fresh start." *See id.*

■ Despite the language of § 523(a)(2), objections to discharge need only satisfy a reasonable person standard to be deemed "substantially justified." *See Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (applying reasonable person standard to attorney's fees claim under the Equal Access to Justice Act, from which § 523(d) was derived). An objection to discharge is "substantially justified" despite a determination of dischargeability if it has a reasonable basis in both law and fact. *See id.*

Courts often award fees where an issuer failed to pursue an adequate pre-complaint

investigation. *See, e.g. AT & T Universal Card Servs. Corp. v. Parsons (In re Parsons)*, 217 B.R. 959, 961 (Bankr.M.D.Fla. 1998). These courts foist an attorney's fee burden upon an issuer who objects to dischargeability without attending a § 341 meeting or conducting a Rule 2004 examination. *See id.*

■ The "special circumstances" exception to an award of attorney's fees for an unreasonable objection to discharge generally applies where an objection is based upon a novel legal theory or where a party objecting to discharge has shown that debtor engaged in some malfeasance short of fraud required for non-discharge. *See AT & T Universal Card Servs. Corp. v. McIvor*, 1997 WL 749425, *3 (E.D.Pa. Dec. 4, 1997).

## 2. APPLICATION TO THE INSTANT CASE

The Court finds that Plaintiff's Complaint Seeking Exception to Discharge had a reasonable basis in both law and fact.

■ First, a preliminary note on the Court's approach to the reasonableness test. This Court elects to conduct a comprehensive factual inquiry into the reasonableness of Plaintiff's Complaint rather than to fall back upon attendance at a § 341 hearing or Rule 2004 examination as the determinative factors. Courts which use the 341/2004 attendance test also generally apply the more stringent, literal "substantial justification" test rather than the "reasonableness" standard applied by the Supreme Court in *Pierce. See Parsons*, 217 B.R. at 961.[4] This Court finds that an issuer's § 523(a)(2)(A) actual fraud objection to discharge may be reasonable, and thus substantially justified, even if grounded solely upon a cardholder's dilapidated financial condition at the time of the charges in question. Conversely, an issuer's actual fraud objection to discharge may be unreasonable despite the fact that an issuer showed up at the § 341 meeting and asked a question or conducted a half-hearted Rule 2004 examination.

■ Plaintiff's reliance on the "implied representation" theory may be legally untenable before this Court, but it is not legally unreasonable. As noted above, there is no Eleventh Circuit precedent explicitly ruling out this theory's application to the § 523(a)(2)(A) actual fraud exception to discharge. Until the Eleventh Circuit provides controlling guidance on this issue, disagreement among bankruptcy courts and district courts will continue. The pendulum swing toward rejecting the theory is not so universal as to transform Plaintiff's Complaint into an insult to equity.

Defendant did not assert that Plaintiff's interpretation of the facts defied reason. Undoubtedly an insolvent cardholder's credit purchase of a central air conditioning unit and new windows would raise the eyebrows of a reasonable person. Plaintiff presented sufficient evidence to support an inference that Defendant breached the cardholder agreement with enthusiasm and intent to defraud Plaintiff. If this court had not rejected the "implied representation" theory, this inference might have supported a finding of nondischargeability. Plaintiff failed to show that this disrespect was communicated to and relied upon by Plaintiff. However, Plaintiff's argument failed due to an unsuccessful legal argument, rather than because of an unreasonable interpretation of the facts.

---

4. In *Parsons*, Judge Paskay held that in order for a § 523(a)(2)(A) actual fraud objection to discharge to be "substantially justified," an issuer must show actual fraud. *See Parsons*, 217 B.R. at 961.

## CONCLUSION

First, the Court concludes that Plaintiff failed to bring forward evidence to show that Defendant obtained an extension of credit through the employment of actual fraud under § 523(a)(2)(A). Defendant's use of the card did not constitute a misrepresentation of Defendant's intent or ability to pay at least the minimum payment on the credit extended between July 16 and July 28, 1999. Plaintiff failed to present any evidence that Defendant made an affirmative, actual misrepresentation of an intent or an ability to pay at least the minimum payment on the credit extended by Plaintiff between July 16 and July 28, 1999. Therefore, Plaintiff failed to present a prima facie case of § 523(a)(2)(A) actual fraud. The $4,516.00 of credit extended between July 16 and July 28, 1999 will be discharged pursuant to 11 U.S.C. § 727 *et seq.*

Second, the Court concludes that Defendant is not entitled to attorney's fees under § 523(d). Plaintiff's Complaint Seeking Exception to Discharge had a reasonable basis in both law and fact. Therefore, each party will bear its own fees and costs.

The Court will enter a separate Judgment in accordance with these Findings of Fact and Conclusions of Law.