**In re Scott R. RIVERA and Marla R. Rivera, a/k/a Marla Lynn Rapp, Debtors.**

**HOUSEHOLD CREDIT SERVICES, Plaintiff,**

v.

**Scott R. RIVERA and Marla R. Rivera, a/k/a Marla Lynn Rapp, Defendants.**

**Bankruptcy No. 91–1645–BKC–3P7. Adv. No. 91–900.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

March 9, 1993.

MaryEllen G. Koberg, Frith & Stump, P.A., Orlando, FL, for plaintiff.

R. Jason de Groot, Deltona, FL, for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This proceeding is before the Court upon the complaint of Household Credit Services seeking to except a debt from discharge pursuant to 11 U.S.C. § 523(a)(2)(A). A trial was held on October 21, 1993. Upon the evidence presented, the Court enters the following Findings of Fact and Conclusions of Law:

### *Findings of Fact*

In November of 1990, defendants obtained a Visa credit card from plaintiff with a $4,000.00 credit limit. On January 7, 1991, defendants wrote a $2,000.00 check for cash on the account. A second check for the same amount was written on February 11, 1991.

At the time that the checks were written, defendant Marla Rivera was employed as a waitress and earned between $800.00 and $1,000.00 a month. Defendants had purchased a paper route in June of 1990, and defendant Scott Rivera ran the business on a full-time basis.

In early 1991, the paper route was not making a profit, and in the year the business only netted a $58.00 profit.

At the time of the first check, defendants had an oral contract to sell the paper route for $24,000.00. They received a $500.00 deposit and proceeded to train the buyers. However, the sale was never consummated.

Defendants sought another buyer and, on February 4, 1991, entered into a written contract to sell the business for $18,000.00. This sale was also never completed.

Defendants, owing approximately $13,-000.00 to the prior owner for the paper route, eventually returned the business in March, 1991.

The $4,000.00 obtained from the account was used to pay personal bills, including the mortgage, electricity, water, groceries, and child care.

Defendants made only one $50.00 payment in late January, 1991, on the credit card.

Approximately four days after writing the second check, defendants visited an attorney and discussed bankruptcy.

On April 4, 1991, defendants filed a petition for relief under chapter 7. At such time, defendants' schedules showed monthly income of $800.00 and monthly expenses of $5,166.07. The evidence indicates that this figure includes duplicate entries for defendants' mortgage payment of $646.00, thus the expenses were actually $4,520.07 a month. The schedules also showed over $49,000.00 in unsecured debt.

Defendants testified that these figures were essentially the same at the time the checks were written. However, they also testified that many of the expenses were business related and that they had antici-

pated approximately a $2,000.00 reduction in expenses when the business sold.

Prior to the return of the business, defendant Scott Rivera actively sought employment, sending out resumes and attending interviews. Due to the demands of the paper route, however, he had to turn down several job offers. After the business was returned, he accepted employment as general manager of a restaurant with an annual salary of $30,000.00.

## Conclusions of Law

Section 523 of the Bankruptcy Code provides the circumstances under which a particular debt will be excepted from a debtor's discharge. Subsection (a)(2) deals with money or credit obtained through fraudulent conduct and reads in relevant part:

> (a) A discharge under ... this title does not discharge an individual debtor from any debt—
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> (A) false pretenses, a false representation, or actual fraud.....

The Eleventh Circuit addressed the dischargeability of credit card debt under section 17a(2) of the Bankruptcy Act of 1898 [1] in *First Nat. Bank v. Roddenberry*, 701 F.2d 927 (11th Cir.1983). Although the debtors had exceeded their credit limit, the issuing institution had not revoked their credit card privileges. The Court held that "only after such clear revocation has been communicated to the card holder, will further use of the card result in liabilities obtained by 'false pretenses or false representation.'" *Id.* at 932.

Having rejected the "implied misrepresentation" concept, the Court concluded that regardless of the debtors' ability to repay the debt, the bank assumed the risk of non-payment until the credit privileges were unequivocally revoked. *Id.* at 932–33.

1. Section 17a of the former statute reads in pertinent part:
   a. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as

Accordingly, only debts incurred subsequent to revocation were obtained by false pretenses or false representation and nondischargeable under section 17a(2).

The *Roddenberry* case, decided under the old Bankruptcy Act, left unresolved the question of whether the addition of the phrase "actual fraud" in § 523(a)(2)(A) of the Bankruptcy Code altered the ultimate result. *Id.* 929–30 n. 3. However, the case retains its precedential value and binds this Court. *See Birmingham Trust Nat. Bank v. Case*, 755 F.2d 1474 (11th Cir.1985) (differences between 11 U.S.C. § 523(a)(2)(A) and section 17a(2) of Bankruptcy Act of 1898 are negligible, so case law construing the Act provides guidance in applying the Code).

▮ In the instant proceeding, none of the evidence indicates that plaintiff revoked defendants' credit privileges before the checks were written. Under the *Roddenberry* rationale, this Court cannot imply a misrepresentation merely based on alleged inability to pay. Under the circumstances, plaintiff's claim of obtaining money under false pretenses must fail.

▮ However, plaintiff also maintains that the circumstances surrounding the writing of the checks establish that defendants committed actual fraud under § 523(a)(2)(A). In order to prevail, plaintiff must prove the following:

(1) the defendant made materially false representations;

(2) that at the time he made them he knew the representations were false;

(3) that he made them with the intention of deceiving the other party;

(4) that the other party relied upon those representations; and

(5) that the other party sustained damages as the proximate result of those misrepresentations.

...
(2) are liabilities for obtaining money or property by false pretenses or false representations.

*In re Landen,* 95 B.R. 826, 828 (Bankr. M.D.Fla.1989); *In re Young,* 90 B.R. 521, 522 (Bankr.M.D.Fla.1988). The party claiming the exception to discharge has the burden of proving each of the elements by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Plaintiff contends that defendants misrepresented their intention to repay the debt when they wrote the checks. This Court has outlined the factors to be considered in assessing a debtor's intention to repay a credit card debt:

1) The length of time between the making of the charges and the filing of bankruptcy;

2) whether or not an attorney had been consulted concerning the filing of bankruptcy before the charges were made;

3) the number of charges made;

4) the amount of the charges;

5) the financial condition of the debtor at the time the charged are made;

6) whether the charges were above the credit limit of the account;

7) were there multiple charges on the same day;

8) whether or not the debtor was employed;

9) the financial sophistication of the debtor;

10) whether there was sudden change in the debtors spending habits; and

11) whether the purchases were made for luxuries or necessities.

*In re Landen,* 95 B.R. at 828–29; *In re Carpenter,* 53 B.R. 724, 730 (Bankr. N.D.Ga.1985). No one factor is determinative. The Court must consider all the evidence and assess a debtor's intent on a case-by-case basis.

In the instant case, only the first, fourth, fifth, eighth, and tenth factors could conceivably be argued as indicative of a fraudulent intent. The remaining elements support the defendants. Several of the factors are especially relevant to defendants' case: a) only two charges were made; b) the amount charged did not exceed the authorized credit limit; c) no luxury items were purchased; and d) an attorney was not consulted until *after* the charges were made.

Since bankruptcy is intended to provide the debtor with a fresh start and exceptions to discharge are strictly construed in favor of the debtor, this Court concludes that the evidence presented is insufficient to establish actual fraud. The picture painted is of two people struggling to make a business successful. Having failed, they sought to sell it and use the equity to reduce their debts. In addition, defendant Scott Rivera sought employment that would significantly increase the couple's income.

Although defendants may not have exercised the best business judgment, plaintiff has not established that they committed actual fraud. Consequently, the debt of $4,182.93 owed by defendants to plaintiff is included within the scope of defendants' discharge.

A separate Judgment finding in favor of defendants and against plaintiff will be entered.