**In re Thomas Roberto DIAZ and Nelly Maria Diaz, Debtors.**

**AMERICAN EXPRESS TRAVEL RELATED SERVICES CO., INC., Plaintiff,**

v.

**Thomas Roberto DIAZ, a/k/a Thomas R. Diaz and Nelly Maria Diaz, a/k/a Nelly Diaz, Defendants.**

**Bankruptcy No. 92–05399–6C7. Adv. No. 92–336.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Jan. 5, 1994.

Gilbert Weisman and Donald Morrison, for plaintiff American Exp. Travel Related Services Co., Inc.

Nelly Diaz, pro se.

### MEMORANDUM OPINION

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on the complaint of the Plaintiff, American Express Travel Related Services Company, Inc. to determine the dischargeability of indebtedness owing to them from the Debtors/Defendants, Thomas Roberto Diaz and Nelly Maria Diaz. Appearing for the Plaintiff, American Express Travel Related Services Company, Inc. were attorneys Gilbert Weisman and Donald Morrison, and appearing for the Debtors/Defendants was Nelly Diaz. After reviewing the pleadings, evidence, receiving testimony, exhibits, and arguments of counsel, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

The Diaz's opened an account with American Express Travel Related Services Company in May 1991. Between November 5, 1991 and September 17, 1992, the Diaz's used their American Express card in 213 transactions charging $49,811.58 with payments and credits of $17,449.21 for travel involved in the buying and selling of merchandise throughout the western hemisphere. The last payment on their account was received on April 28, 1992 and the Diaz's made 129 charges thereafter.

Nelly Diaz first conferred with a friend on or about June 1, 1992 about filing bankruptcy and her friend referred her to a lawyer with whom she met on June 26, 1992. The petition was signed August 12, 1992 and filed September 17, 1992. On June 17, 1992, American Express sent two letters to Defendants notifying them that their account had been canceled and on July 1, 1992, American Express sent Defendants another notice that they were to return all of their charge cards. Between June 1, 1992 and June 26, 1992, the Diaz's had 39 transactions totalling $5,157.89. After June 26, 1992, the Diaz's had 34 transactions and owed American Express an additional $8,894.77.

American Express contends the debt the Defendants owe to it should be declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) & (C).

### CONCLUSIONS OF LAW

■ American Express seeks to except from discharge the indebtedness owed to it because the Diaz's obtained credit through actual fraud. In accordance with 11 U.S.C. § 523(a), certain obligations survive a debtor's bankruptcy. Section 523 provides in pertinent part:

§ 523. Exceptions to discharge.

(a) A discharge under section 727, 1141, 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . .

(2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

. . . . .

(C) for purposes of subparagraph (a) of this paragraph, consumer debts owed to a single creditor and aggregating more than $500 for "luxury goods or services" incurred by an individual debtor on or within forty days before the order for relief under this title, or cash advances aggregating more than $1,000 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within twenty days before the order for relief under this title, are presumed to be nondischargeable; "luxury goods or services" do not include goods or services reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor; . . . .

■ Credit card issuers assume the risk of nonpayment when they issue a credit card and are compensated for this risk. The finance charge, which is typically higher than that charged by other lenders, factors in this risk. And, this risk does not entitle credit card issuers more protection under 11 U.S.C. § 523 than other creditors. *In re Ward,* 857 F.2d 1082, 1085 (6th Cir.1988) (citing *First National Bank of Mobile v. Roddenberry,* 701 F.2d 927, 932 (11th Cir.1983)).

The case at hand differs from the facts in *Roddenberry* where the debtors' credit limit was extended twice when their outstanding balance already exceeded their new credit limit. The wife went on a credit card spending spree obtaining cash advances to live on during her separation from her husband. The court found that Mrs. Roddenberry's purchases and cash advances were not obtained by false pretenses or false representations because credit was continually extended, and credit obtained prior to communication of revocation of card privileges was assumed by the bank. The court did not have before it a debtor incurring credit while contemplating bankruptcy.

■ The court in *Roddenberry* recognized modern credit transactions, however, should be individually examined to determine whether the liability is of the type anticipated to be discharged. Debts incurred prior to unconditional revocation of a cardholder's right to use and possession of that card may be dischargeable. However, debts incurred with the knowledge that one is not entitled to possession or use of a credit card are nondischargeable. Beyond the point of revocation, a debtor is not merely concealing an inability to pay, but is affirmatively defrauding the

creditor with whom the debtor no longer has any type of relationship. *Roddenberry*, 701 F.2d at 932. The Diaz's made no payments after April 28, 1992. American Express communicated the revocation of card privileges on June 17 and again on July 1, 1992.

In analyzing the decision of earlier precedent of *Davison–Paxon Co. v. Caldwell*, 115 F.2d 189 (5th Cir.1940), cert. denied, 313 U.S. 564, 61 S.Ct. 841, 85 L.Ed. 1523 (1941), *Roddenberry* explains that the court was not rewarding a debtor's fraudulent concealment of insolvency, but, "... sought to deny a particularly improvident creditor the special privilege of an exemption from a general discharge." *Roddenberry*, 701 F.2d at 930.

In a later case, the Eleventh Circuit Court of Appeals concluded in order to preclude the discharge of a particular debt, "[t]he debtor must be guilty of positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, and not implied fraud of fraud in law which may exist without the imputation of bad faith or immorality." *In re Hunter*, 780 F.2d 1577, 1579 (11th Cir.1986) (citations omitted).

In this case, the Diaz's made no payments to American Express since April 28, 1992, and unlike *Roddenberry* where no evidence was presented that the debtors intended filing bankruptcy while incurring credit, the Diaz's contemplated filing bankruptcy on June 1, 1992 when Mrs. Diaz spoke with her friend regarding obtaining a referral to a bankruptcy lawyer. After meeting with and retaining the lawyer on June 26, 1992, the Diaz's intent to file bankruptcy was absolutely clear. Yet, they continued to accrue charges and make no payments to American Express. Meanwhile, American Express took reasonable action in notifying the Diaz's that their credit privileges were revoked.

 Although *Roddenberry* indicated debts incurred prior to unconditional revocation of a cardholder's right to use and possess that card *may* be dischargeable (emphasis added), it is the honest but unfortunate debtor Congress intended to protect through the Bankruptcy Code. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Collins*, 946 F.2d 815, 816–817 (11th Cir.1991); *TranSouth Fin. Corp. of*

*Fla. v. Johnson*, 931 F.2d. 1505, 1508 (11th Cir.1991). Congress concluded that the creditor's interest in recovering full payment of debts pursuant to 11 U.S.C. § 523(a) outweighed the debtor's interest in a completely fresh start. *Grogan*, 498 U.S. at 285–87, 111 S.Ct. at 659. By creating the fraud exceptions to discharge, Congress sought to discourage fraudulent conduct and ensure that relief intended for honest debtors does not inure to the benefit of dishonest ones. *Collins*, 946 F.2d at 816–817; *Birmingham Trust Nat. Bank v. Case*, 755 F.2d 1474, 1477 (11th Cir.1985). In other words, the intent was to give the honest but unfortunate debtor a fresh start, not the dishonest and fraudulent debtor a jump start. As the Supreme Court stated in *Grogan:*

> We think it unlikely that congress, in fashioning the standard of proof that governs the applicability of these provisions, would have favored the interest in giving the perpetrators of fraud a fresh start over the interest in protecting the victims of fraud.

*Grogan*, 498 U.S. at 287, 111 S.Ct. at 659. Although creditors should not be rewarded for negligence, likewise debtors contemplating bankruptcy who continue incurring charges without payment to their creditors should not be rewarded.

On June 1, 1992, Nelly Diaz conferred with a friend to assist her in seeking bankruptcy counsel of behalf of herself and her husband. At that time, the Diaz's contemplated bankruptcy protection while continuing to accrue charges to their American Express account and had made no payments since April 28, 1992. Accordingly, the Diaz's had the requisite intent to defraud American Express on June 1, 1992 and all indebtedness owed by the Diaz's to American Express after June 1, 1992 shall be nondischargeable.

## JUDGMENT

The complaint of the Plaintiff, American Express Travel Related Services Company, Inc. to determine the dischargeability of indebtedness owing to them from the Debtors/Defendants, Thomas Roberto Diaz and Nelly Maria Diaz, having been tried before the court and after reviewing the pleadings,

evidence, receiving testimony, exhibits, and arguments of counsel, and in conformity with and pursuant to the **Memorandum Opinion** entered contemporaneously herewith, it is

**ORDERED, ADJUDGED and DECREED** that the relief sought in the complaint of the Plaintiff, American Express Travel Related Services Co., Inc., objecting to the dischargeability of indebtedness owed to it by the Debtors, Thomas Roberto Diaz and Nelly Maria Diaz is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED, ADJUDGED and DECREED** that the indebtedness owed by the Debtors, Thomas Roberto Diaz and Nelly Maria Diaz to American Express Travel Related Services Co., Inc. for all charges from June 1, 1992 less any credits, delinquency, finance charges or membership fees, in the sum of $7,096.24 is **NONDISCHARGEABLE;** and it is further

**ORDERED, ADJUDGED and DECREED** that judgment is entered in favor of American Express Travel Related Services Co., Inc. against the Debtors, Thomas Roberto Diaz and Nelly Maria Diaz in the sum of $7,096.24 together with interest at the rate of _____ from the date of this judgment; and it is further

**ORDERED, ADJUDGED and DECREED** that all other indebtedness owed to American Express by the Debtors, Thomas Roberto Diaz and Nelly Maria Diaz, is **DISCHARGEABLE** and shall be discharged if and when a discharge is granted to the Debtors.