**In re Rene ACKER, Debtor.**

**AT & T UNIVERSAL CARD SERVICES CORP., a Delaware corporation, Plaintiff,**

v.

**Rene ACKER, Defendant.**

**Bankruptcy No. 96–655–BKC–3P7.
Adv. No. 96–288.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Feb. 24, 1997.

**14**

Lance P. Cohen, Jacksonville, FL, for Plaintiff.

David B. Lee, Jacksonville, FL, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This proceeding came before the Court on a Complaint to Determine Dischargeability of Consumer Debt. Upon the evidence offered at trial on October 16, 1996 and November 26, 1996, the Court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. Defendant is twenty-three (23) years old and has a high school education. Plaintiff sent Defendant a pre-approved credit card application, which Defendant completed and returned. Plaintiff opened a credit account in Defendant's name and issued him a credit card. (Defendant's Brief at 1).

2. Between November 11, 1995 and January 19, 1996, Defendant used the credit card to make seven (7) purchases totalling $230.30 as follows:

| Amount | Place or Purpose of purchase |
|--------|------------------------------|
| $ 8.19 | hardware store |
| 10.08 | hardware store |
| 51.25 | hardware store |
| 45.24 | hotel charge |
| 32.00 | pest control |
| 29.82 | department store |
| 53.72 | cable television service charge |
| $230.30 | |

(Defendant's Brief at 2).

3. Defendant also took one cash advance for $3,400. Defendant testified that he took out the cash advance primarily for the purpose of investing in a jet ski rental business. He testified that he gave $2,000 from the cash advance to an associate for the purchase of a jet ski. The associate never purchased the jet ski and Defendant has been unsuccessful in his attempts to recover the $2,000. Defendant testified that he used the remainder of the cash advance to pay ordinary living expenses and bills.

4. At the time Defendant made the seven (7) charges and took the cash advance, Plaintiff had not revoked Defendant's credit privileges. (Defendant's Brief at 2).

5. Defendant's bankruptcy schedules show that at the time of filing, his monthly income was $696 and his monthly expenses were $1,150. The schedules also show that Defendant owed approximately $20,300 in credit card debt.

6. When the Defendant made the charges and took the cash advance, he was employed as an operator at AT & T. Defendant testified that he was contacted by union officials who told him he might be laid off from his job. Defendant further testified that the news of his possible layoff and the loss of the

$2,000 prompted him to contact a bankruptcy attorney.

7. Defendant filed his petition for relief under Chapter 7 of the Bankruptcy Code on February 6, 1996. Plaintiff produced documentary evidence which showed that Defendant voluntarily left AT & T in April of 1996, four months after the petition was filed. (Plaintiff Ex. 11 and 12).

8. On May 13, 1996, Plaintiff filed a complaint to determine dischargability of consumer debt, alleging that the credit card debt owed by Defendant to Plaintiff is nondischargable pursuant to 11 U.S.C. § 523(a)(2).

### CONCLUSIONS OF LAW

Bankruptcy Code section 523 provides the circumstances under which a debt can be excepted from a bankruptcy discharge. Section 523(a)(2) provides:

(a) A discharge ... does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

.    .    .    .    .

(C) for purposes of subparagraph (A) of this paragraph, consumer debts owed to a single creditor and aggregating more that $1,000 for "luxury goods or services" incurred by an individual debtor on or within 60 days before the order for relief under this title, or cash advances aggregating more than $1,000 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within 60 days before the order for relief under this title, are presumed to be nondischargable: 'luxury goods or services' do not include good or services reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor; an extension of consumer credit under an open end credit plan is to be defined for purposes of this subparagraph as it is de-

fined in the Consumer Credit Protection Act[.]

11 U.S.C. § 523(a)(2)(A) and (C).

In this case, Plaintiff concedes that because it never revoked Defendant's credit privileges, it cannot argue that Defendant made purchases or took the cash advance under false pretenses or through false representations. Plaintiff, however, suggests that it does not have to prove actual fraud in relation to the cash advance because the cash advance is presumed to be nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(C). (Plaintiff's Brief at 1). Plaintiff further argues that the Defendant failed to meet his burden of overcoming the presumption by showing that the cash advance was not obtained through actual fraud. (Plaintiff's Brief at 2). Finally, Plaintiff states that the other charges made by the Defendant were obtained through actual fraud and are also nondischargeable. (Plaintiff's Brief at 7).

Defendant argues that neither the cash advance nor the other charges were obtained through actual fraud. Defendant suggests that the inquiry the Court must employ is whether the Defendant intended to repay the debts when they were incurred, rather than whether the Defendant was insolvent at the time. (Defendant's Brief at 5–7).

### A. Plaintiff must prove actual fraud

■ The Eleventh Circuit Court of Appeals has held that a creditor cannot prevail under § 523(a)(2)(A) on allegations of false pretense or false representations if the creditor did not revoke the credit privileges of the debtor. *First Nat'l Bank of Mobile v. Roddenberry*, 701 F.2d 927 (11th Cir.1983). In the instant case, the Plaintiff concedes that it had not revoked the credit privileges of the Defendant at the time Defendant made the charges and took the cash advance. Thus, the Plaintiff must prove by a preponderance of the evidence that the charges and the cash advance were procured through actual fraud. *See Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991) (holding that "the standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard.").

Under § 523(a)(2)(A), a finding of actual fraud is required to except a debt from discharge. *Household Credit Services v. Rivera (In re Rivera)*, 151 B.R. 602 (Bankr. M.D.Fla.1993). *See also AT & T Universal Card Services Corp. v. Chinchilla (In re Chinchilla)*, 202 B.R. 1010, 1013 (Bankr. S.D.Fla.1996) (holding that "[t]o successfully bring an action under § 523(a)(2)(A), a creditor must prove that the debtor committed 'actual fraud'."). To prove actual fraud, the Plaintiff must show the following:

(1) the defendant made materially false representations;

(2) that at the time he made them he knew the representations were false;

(3) that he made them with the intention of deceiving the other party;

(4) that the other party relied upon those representations; and

(5) that the other party sustained damages as the proximate result of those misrepresentations.

*Rivera*, 151 B.R. at 604.

Because a debtor's intent to repay is required for a finding of actual fraud, courts have routinely examined the circumstances surrounding the origination of debt to determine the debtor's intent. These factors include the following:

(1) The length of time between the charges made and the filing of bankruptcy;

(2) Whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

(3) The number of charges made;

(4) The amount of the charges;

(5) The financial condition of the debtor at the time the charges are made;

(6) Whether the charges were above the credit limit of the account;

(7) Whether the debtor made multiple charges on the same day;

(8) Whether or not the debtor was employed;

(9) The debtor's prospects for employment;

(10) The debtor's financial sophistication;

(11) Whether there was a sudden change in the debtor's buying habits; and

(12) Whether the purchases were made for luxuries or necessities.

*Chinchilla*, 202 B.R. at 1014.

### B. Presumption of Fraud under § 523(a)(2)(C)

Although Section 523(a)(2)(A) requires proof of actual fraud, section 523(a)(2)(C) provides that in the case of a cash advance, a creditor is entitled to a presumption of fraud if the creditor can prove that the cash advance was for more than $1,000, it was obtained within 60 days of the bankruptcy petition, and it was an extension of a consumer credit plan as defined in the Consumer Protection Act. 11 U.S.C. § 523(a)(2)(C). If the creditor meets this burden, the presumption is "that the debtor incurred the debt without the intention to repay the obligation." *American Express Centurion Bank v. Hinshaw (In re Hinshaw)*, 199 B.R. 786, 791 (Bankr.M.D.Fla. 1995).

### C. Defendant's burden of overcoming presumption

Once a creditor has established the applicability of the presumption, "the burden of proof in applying § 523(a)(2)(A) shifts to the debtor, and the debtor must then overcome the presumption that the money was obtained by false pretenses, a false representation, or actual fraud." *ITT Financial Services, Inc. v. Claar, (In re Claar)*, 72 B.R. 319, 322 (Bankr.M.D.Fla.1987). In other words, the Defendant must now show that the debt was not incurred in contemplation of bankruptcy, without the intent to repay. *Bank One Lafayette, N.A. v. Larisey (In re Larisey)*, 185 B.R. 877, 881 (Bankr.M.D.Fla. 1995). This assessment depends wholly on whether the debtor intended to repay the debt, not whether the debtor incurred the debt with no ability to pay. *AT & T Universal Card Services Corp. v. Chinchilla (In re Chinchilla)*, 202 B.R. 1010, 1014 (Bankr. S.D.Fla.1996) (concluding that "[a] finding of 'actual fraud' in a credit card case will only arise where the creditor proves that the debtor incurred the charges with no intention to pay and not if the creditor simply proves that the debtor incurred the debt with no

ability to pay."). *See also Anastas v. American Savings Bank (In re Anastas)*, 94 F.3d 1280, 1285 (9th Cir.1996) (finding that "the central inquiry in determining whether there was a fraudulent representation is whether the card holder lacked an intent to repay at the time he made the charge.").

### 1. Dischargability of cash advance

██ Plaintiff asserts that it has proven its entitlement to the presumption offered by § 523(a)(2)(C) because the cash advance was for more than $1,000, it was obtained within 60 days prior to the petition date, and it was an extension of a consumer credit plan. The Court finds that Plaintiff is entitled to the presumption of dischargability on the cash advance.

Thus, the Defendant must now prove that the cash advance was not obtained through actual fraud or without intent to repay. Defendant testified that the cash advance was not obtained through actual fraud or without intent to repay. Defendant testified that the cash advance was primarily used for the purchase of a jet ski, with which he intended to procure supplemental income to pay his bills. He gave $2,000 cash to an individual whom he thought would purchase a jet ski for this purpose. The remainder of the cash advance was used to pay ordinary living expenses and other bills.

Plaintiff suggests that Defendant has failed to rebut the presumption that the cash advance is nondischargable because he was hopelessly insolvent at the time the advance was made, and he was taking cash advances on credit cards to meet other obligations. Plaintiff further argues that Defendant knew he could not repay the debt and did not intend to do so when he took the cash advance.

However, Plaintiff failed to present persuasive evidence to prove that the Defendant did not intend to repay the debt. Plaintiff's argument focuses on the inability of the Defendant to pay, rather than the willingness or unwillingness of the Defendant to pay. The Defendant in this case is twenty-three (23) years old. He has over $20,000 in credit card debt, which indicates that he is financially unsophisticated. His financial condition, however, is not evidence enough that he did not intend to repay the debt.

Plaintiff suggested that the $2,000 might have been intended for the purchase of something other than the jet ski, but failed to present evidence to rebut the Defendant's assertion that he intended to operate a jet ski rental business with that $2,000. Plaintiff also argued that the Defendant was trying to "load up" by purchasing the jet ski for personal use with the intent to file bankruptcy. However, Defendant testified that he would not have filed for bankruptcy had it not been for the loss of the $2,000 and the threat of being laid off from his job.

Defendant testified that he used the remainder of the cash advance to pay ordinary living expenses and bills. The Plaintiff failed to present evidence to prove that the Defendant used those funds for any other purpose.

The Court finds that the testimony of the Defendant was credible. Although the Defendant may have utilized poor business judgment which contributed to his already desperate financial condition, the Court finds that the Plaintiff produced insufficient evidence to prove that the Defendant obtained the cash advance without intent to repay it. The evidence shows that the Defendant intended to repay the cash advance with funds generated by a jet ski rental business. The Court finds that the Defendant has overcome the presumption of fraud provided by § 523(a)(2)(C), and the cash advance is dischargeable.

### 2. Dischargability of Purchases

██ The Court must also determine the dischargability of the seven (7) charges made by the Defendant. The Plaintiff is not entitled to a presumption on these charges, and must prove that the Defendant incurred them through actual fraud. The Court will consider the factors mentioned above to determine if actual fraud exists in this case.

First, the length of time between the charges and the bankruptcy filing was approximately twenty (20) days. Although this is a short time period, the charges appear to have been for purchases in the normal course of Defendant's lifestyle, and it does not ap-

pear to the Court that the Defendant intended not to repay the obligations.

Next, Defendant testified that he consulted with an attorney approximately two weeks after the charges were incurred. This element is not indicative of fraud.

Defendant had seven (7) charges and one cash advance on the card. The Court finds that these do not represent an extraordinary number of transactions for a one month period.

With the exception of the cash advance, the amounts of the other charges were relatively small. The amounts of the charges do not appear to indicate that the charges were made fraudulently.

At the time the charges were made, the Defendant was struggling financially. He was using credit cards to make payments on other credit cards, and his liabilities exceeded his income. However, financial difficulty does not equate intent not to repay. In fact, the Defendant's efforts to balance credit card debts shows his efforts to repay debts, albeit in a haphazard, financially irresponsible manner.

The Defendant's credit limit on Plaintiff's credit card was $3,500. Defendant exceeded the credit limit. However, Plaintiff did not revoke Defendant's credit privilege.

Defendant's credit card record indicates that he made multiple charges to a hardware store on the same day, which could indicate that he was involved with some type of repair or project. Repetitive charges on the same day in such a situation would not be unusual.

Defendant was employed when the charges were made.

Defendant was financially unsophisticated.

Neither the charges nor the cash advance indicate a change in the Defendant's spending habits. His schedules indicate that he was in debt, and it does not appear that the types of charges Defendant charged with Plaintiff's credit card were uncharacteristic for him.

The Court finds that the charges made by the Defendant were not for luxury goods. Although the items at the hardware store were not itemized, it is unlikely that the Defendant would purchase luxury items from such a business. The pest control charge is more of a necessity than a luxury. The department store charge is not itemized, but the Court finds it reasonable that such a charge would be for some type of clothing or another item that would not be considered a luxury. Although the cable television charge and the hotel charge could be viewed as a non-essential expenses, the Plaintiff failed to offer evidence to show that these items are in fact luxury purchases.

Based on the totality of the circumstances, the Court finds that the seven (7) charges made by the Defendant were not made through actual fraud. The Court finds that the Defendant intended to repay the debt, and absent any actual fraud, the Court must find the debt to be dischargeable.

### CONCLUSION

Defendant presented credible evidence sufficient to overcome the presumption that the cash advance was nondischargable. The Plaintiff failed to offer sufficient evidence that the Defendant did not intend to repay the cash advance or the other charges. The Court finds that the entire debt owed by Defendant to Plaintiff is dischargeable, and judgment should be entered in favor of the Defendant. The Court will enter a judgment consistent with these findings of fact and conclusions of law.