**In re Gene HUNTER, Debtor.**

**FIRST USA BANK, Plaintiff,**

v.

**Gene HUNTER, Defendant.**

**Bankruptcy No. 96–02125–6J7.**

**Adversary No. 96–253.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

June 27, 1997.

Gary J. Lublin, Orlando, FL, for Plaintiff.

Gene Hunter, Orlando, FL, Pro Se.

*FINDINGS OF FACT AND CONCLU-
SIONS OF LAW ON COMPLAINT TO
DETERMINE DISCHARGEABILITY
OF DEBT*

KAREN S. JENNEMANN, Bankruptcy
Judge.

This adversary proceeding came on for
hearing on April 7, 1997, on the Complaint
Seeking Exception to Discharge (the "Complaint") filed by First USA Bank (the "Plaintiff") (Doc. No. 1). The Plaintiff contends it is entitled to a money judgment against the *pro se* defendant, Gene Hunter (the "Defendant"), which is nondischargeable pursuant to Section 523(a)(2)(A) of the Bankruptcy Code. After reviewing the pleadings and the applicable law, a final judgment is entered in favor of the Defendant.

Prior to filing this Chapter 7 case on April 8, 1996 (the "Petition Date"), the Defendant maintained a credit card account with the Plaintiff for approximately five years. The outstanding balance on the account was $6,540.95 on the Petition Date, which includes a cash advance of $1,500 taken on February 8, 1996.

On July 1, 1996, the Plaintiff filed its Complaint asserting that the credit card balance was not dischargeable because it was incurred as a result of the Defendant's false representations and actual fraud. Plaintiff attempted to prove its allegations through pretrial discovery by sending the Defendant Requests for Admissions and Interrogatories (Plaintiff's Ex. No. 3). The Plaintiff used an incorrect address in mailing these discovery requests, and the Defendant credibly testified that he never received them. As such, the only evidence introduced at trial was the testimony of the Defendant and the introduction of certain exhibits by both parties.

At the same time when the Plaintiff was not able to properly serve its discovery requests on the Defendant, it was successful in mailing the Defendant an application for a new First USA Platinum card. On March 28, 1997, one week prior to this trial, the Defendant received a letter from the Plaintiff which read:

Dear Gene C. Hunter:

Your outstanding financial management has earned you another opportunity for a very distinctive form of recognition: *An Invitation to carry the First USA Platinum card.* [emphasis in original] That's probably a better deal than any other card you now carry or are likely to read about.

(Defendant's Ex. No. 19). The letter went on to describe to the Defendant the advantages and benefits of the First USA Platinum card offering a line of credit from $5,000 to up to $100,000. Presumably, the Defendant's bankruptcy petition, the pendency of this adversary proceeding, and the Defendant's prior default on his first credit card with the Plaintiff were not factors the Plaintiff deemed significant in offering to give the Defendant a new platinum credit card.

The Defendant is a postal worker and earns a net income of $2,800 per month. He also receives military retirement pay of $750 per month. The Defendant had always paid his bills on a timely basis until about four months before the Petition Date when his wife required emergency medical care. Due to these unexpected medical costs, his expenses dramatically increased, and he started to fall behind on his financial obligations.

The monthly statements sent by the Plaintiff to the Defendant support his testimony (Plaintiff's Ex. No. 2). The statements for January and February, 1996, reflect no past due payments. The first indication of a missed payment appears in March, 1996. On this last statement, the Plaintiff offered to finance an exotic cruise for the Defendant.

Rather than continue to use his remaining available credit, the Defendant promptly and responsibly pursued bankruptcy relief and filed this case on April 8, 1996. As the Defendant's own testimony best concludes:

> I did not step into the situation with that card or any other card to say, in five years I am going to file bankruptcy. That was never in my mind. I'm a country person. We try to do what we can. But sometimes even country people get pushed into corners to where there is no out. . . . But I did not try to cheat them [Plaintiff].

In this adversary proceeding, the Plaintiff asserts that the Defendant did not intend to repay the debt due to the Plaintiff at the time the charges were made. The Plaintiff further claims that the Defendant's actions constitute serious misrepresentations of fact upon which the Plaintiff justifiably relied. As such, the Plaintiff contends that the credit card debt is not dischargeable pursuant to Section 523(a)(2)(A) of the Bankruptcy Code.

The Plaintiff further contends that the cash advance made on February 8, 1996, is presumptively nondischargeable pursuant to Section 523(a)(2)(C) of the Bankruptcy Code.

*Section 523 (a)(2)(A).* A preponderance of the evidence standard applies to all exceptions from dischargeability contained in Section 523(a) of the Bankruptcy Code. *Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991). Exceptions to discharge are to be construed strictly in favor of the debtor. *Schweig v. Hunter (In re Hunter),* 780 F.2d 1577, 1578 (11th Cir. 1986).

Section 523(a) (2)(A) provides, in pertinent part, that:

(a) A discharge under Section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt . . .

    (2) for money, property, or services, or an extension, renewal, or refinancing of credit, to the extent obtained by

      . . .

      (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A) (1996).

In order for a debt to be non-dischargeable under Section 523(a)(2)(A), a creditor must prove five elements:

1) the debtor made a false representation with the purpose and intention of deceiving the creditor;

2) the defendant knew the representations were false at the time they were made;

3) the creditor relied on such representations;

4) the creditor's reliance was justified; and

5) the creditor sustained a loss as the result of such representation.

*Hunter,* 780 F.2d at 1579; *Manufacturers Hanover Trust Co. v. Abercrombie (In re Abercrombie),* 148 B.R. 964, 965–966 (Bankr. M.D.Fla.1992).

■ One of the essential requirements is that the plaintiff prove that it justifiably relied upon the debtor/defendant's misrepresentations. *Field v. Mans,* —— U.S. ——, ——, 116 S.Ct. 437, 445, 133 L.Ed.2d 351 (1995); *City Bank & Trust Co. v. Vann (In re Vann),* 67 F.3d 277, 280 (11th Cir.1995). For example, in this case, Plaintiff must show that it "justifiably relied" upon the Defendant's misrepresentations in extending credit to him.

■ Further, in determining justifiable reliance in connection with credit card debt, the Plaintiff must overcome the presumption of voluntary risk inherent in issuing credit cards and establish actual fraud by the Defendant. An underlying principle in dischargeability cases is that bankruptcy is designed to provide an honest debtor with a new financial start but not to reward a dishonest debtor with a jump start. *American Express Travel Related Serv. Co., Inc. v. Diaz (In re Diaz),* 185 B.R. 867, 870 (Bankr. M.D.Fla.1994). Improvident creditors are not to be afforded special protection in bankruptcy for the assumption of common business risks. *Barnett Bank of Pinellas County v. Tinney (In re Tinney ),* 188 B.R. 1015, 1017 (Bankr.M.D.Fla.1995).

■ In effect, credit card issuers assume the risk of loss for unpaid charges unless and until they revoke the underlying credit card. *First Nat'l Bank of Mobile v. Roddenberry,* 701 F.2d 927, 932–933 (11th Cir.1983). Each case involving modern credit transactions must be examined individually to determine if the liability is nondischargeable. *See, Id.* at 932. If the charges were made after the issuer revoked the credit card, which is not the case here, the debt probably is nondischargeable. *Id.* However, if the charges were made prior to any such revocation, the debt still may be nondischargeable if it was incurred through actual fraud and not merely implied misrepresentations. *Id.*

Most courts in looking at actual fraud connected with the debtor's continued use of credit cards examine the totality of the circumstances surrounding the debtor's actions. *Tinney,* 188 B.R. at 1019–1020; *Chase Manhattan Bank v. Ford (In re Ford),* 186 B.R. 312, 320 (Bankr.M.D.Ga.1995). Although no single factor is determinative, relevant factors to consider include:

1) The length of time between the charges made and the bankruptcy;

2) Whether or not an attorney was consulted about bankruptcy before the charges are made;

3) The number of charges made;

4) The amount of charges made;

5) The financial condition of the debtor at the time the charges are made;

6) Whether the debtor made multiple charges on the same day;

7) Whether the debtor was employed;

8) The debtor's prospects for employment;

9) Whether there was a sudden change in the debtor's buying habits;

10) Whether the purchases were made for luxuries or necessities; and

11) Whether the charges were above the credit limit on the account.

*Ford,* 186 B.R. at 320; *Chase Manhattan Bank v. Carpenter,* 53 B.R. 724 (Bankr. N.D.Ga.1985).

■ *Section 523(a) (2)(C).* Section 523(a)(2)(C) provides that a discharge will be denied for:

[C]onsumer debts owed to a single creditor and aggregating more than $1,000 ... or cash

advances aggregating more than $1,000 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within 60 days before the order for relief under this title, are presumed to be nondischargeable.

11 U.S.C. § 523 (1997).

This section creates a presumption of fraud if the creditor can prove that a cash advance was for more than $1,000, was obtained within 60 days of the bankruptcy petition, and was an extension of a consumer credit plan as defined in the Consumer Protection Act. *AT & T Universal Card Serv. Corp. v. Acker (In re Acker),* 207 B.R. 12, 16 (Bankr. M.D.Fla.1997). This is, however, merely a

presumption and not a per se rule. *Tinney,* 188 B.R. at 1019.

 *Analysis.* Based upon these legal requirements, the Plaintiff has failed to demonstrate that it is entitled to a final judgment. First, the Plaintiff has failed to prove justifiable reliance. Here, not only did the Plaintiff not revoke the Defendant's credit card, the Plaintiff offered to upgrade his card to platinum status at the same time it was suing him! The Defendant did not solicit this offer or accept it. The Defendant simply cannot be a good credit risk one week before trial and culpable of fraud a week later. The Plaintiff clearly was not relying on the Defendant's representations, justifiable or not, as is evidenced by its own actions in offering the Defendant even more credit.

Further, the Plaintiff has utterly failed to prove any fraudulent intent. In order to determine whether a credit card debt is nondischargeable, the Plaintiff must show the totality of the circumstances surrounding the charges and prove that the Defendant incurred the charges with actual fraudulent intent. There was no proof of fraudulent intent at the time the Defendant took the cash advance on his credit card. At trial, the Defendant established he had fallen on financial hard times due to his wife's health problems. Absolutely no credible proof was introduced that he did not intend to pay back what he owed to the Plaintiff. In fact, the Defendant honestly and believably testified that he *always* intended to repay his debts at the time the charges were incurred.

The availability of credit during financially difficult times is a very good reason to maintain credit. *Tinney,* 188 B.R. at 1020. "The test for nondischargeability is not whether the credit was used in difficult times but whether the credit was used with the intent not to repay the debt." *Id.* In this case, instead of incurring additional debt, the Defendant filed this bankruptcy petition. He is an honest debtor seeking a fresh start and is entitled to one.

Accordingly, the Plaintiff has failed to establish that it is entitled to a final judgment against the Defendant under either Section 523(a)(2)(A) or (C) of the Bankruptcy Code. The debt due to Plaintiff is discharged. A separate judgment consistent with this order shall be entered.